ORIGINAL

FILED

08 JUN -2 PM 12: 28

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

1   James W. Brody, SBN 212967
    Ryan F. Thomas, SBN 230491
2   AMERICAN MORTGAGE LAW GROUP, PC
    Attorneys at Law
3   75 Rowland Way, Suite 350
    Novato, California  94945
4   Telephone:  (415) 878-0030
    Facsimile:  (415) 878-0035
5
    Attorneys for Plaintiff
6   PLATINUM COMMUNITY BANK

7

8                    IN THE UNITED STATES DISTRICT COURT

9                FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10  PLATINUM COMMUNITY BANK,            CASE NO. 08 CV 0977 BEN JMA

11              Plaintiff,              COMPLAINT FOR DAMAGES

12        v.

13  PLATINUM REALTY SERVICES d/b/a
    VISION REALTY & MORTGAGE, a California   JURY TRIAL DEMANDED
14  corporation, RICHARD GABINO
    SCATTERDAY, and WILTON VALVERDE,
15                                      BY FAX
            Defendants.
16

17        Plaintiff PLATINUM COMMUNITY BANK, through its counsel American Mortgage Law

18  Group, P.C., brings this action against Defendants PLATINUM REALTY SERVICES d/b/a

19  VISION REALTY & MORTGAGE, RICHARD GABINO SCATTERDAY, and WILTON

20  VALVERDE to recover damages emanating from real estate and loan transactions for properties

21  located in Santa Ana, California and Banning, California.

22                           I.   PARTIES

23        1.    Plaintiff Platinum Community Bank ("PCB") is, and at all times herein mentioned

24  was, a federal savings bank with its principal place of business in Rolling Meadows, Illinois.  PCB

25  is, and at all times relevant herein, authorized to do and does business in California.

26        2.    PCB is informed and believes and thereon alleges that Defendant Platinum Realty

27  Services d/b/a Vision Realty & Mortgage ("Vision") is, and at all times herein mentioned was, a

28  corporation duly organized under the laws of the state of California with its principal place of

                                    -1-
    COMPLAINT FOR DAMAGES

1  business in Ladera Ranch, California.

2      3.      PCB is informed and believes and thereon alleges that Defendant Richard Gabino

3  Scatterday ("Scatterday") is, and at all times herein mentioned was, an individual residing in or

4  around Ladera Ranch, California.  PCB is further informed and believes and thereon alleges that

5  Scatterday is President of Defendant Vision.

6      4.      PCB is informed and believes and thereon alleges that Defendant Wilton Valverde

7  ("Valverde") is, and at all times herein mentioned was, an individual residing in or around San

8  Diego, California.  PCB is further informed and believes and thereon alleges that Valverde is a

9  principal/joint venturer of Defendant Vision.

10          **II.      JURISDICTION AND VENUE**

11      5.      The jurisdiction of the Court over the subject matter is predicated on 28 U.S.C.

12  §1332.  The matter in controversy, exclusive of interests and costs, exceeds the sum of $75,000 and

13  diversity of citizenship exists.

14      6.      Venue is proper in the United States District Court for the Southern District of

15  California pursuant to 28 U.S.C. §1391(a) in that the Defendants reside and/or do business and are

16  subject to personal jurisdiction in this judicial district, and a substantial part of the acts giving rise

17  to the claim occurred in this judicial district.

18          **III.      GENERAL ALLEGATIONS**

19  A.      The Mortgage Broker Agreement and Joint Venture

20      7.      In or about January 2006, PCB and Scatterday, on behalf of Vision, entered into a

21  written agreement entitled "Mortgage Broker Agreement" which provided the terms and conditions

22  for the submission of potential loans by Vision to PCB for funding.  The Mortgage Broker

23  Agreement has, at all times mentioned herein, been in full force and effect.  A true and correct copy

24  of the Mortgage Broker Agreement is attached hereto as **Exhibit A** and incorporated by reference

25  as though fully set forth herein.

26      8.      Thereafter, PCB is informed and believes and thereon alleges that Scatterday,

27  Valverde, and third parties including, without limitation, Surpacific Home Loans, Inc. entered into

28  an agreement between and among themselves whereby Valverde and/or Surpacific Home Loans,

-2-

COMPLAINT FOR DAMAGES

1   Inc. would refer potential mortgage loan clients to Scatterday and Vision in exchange for

2   compensation or other forms of remuneration from Scatterday and/or Vision.  This agreement was

3   never disclosed to PCB.

4         9.     PCB is informed and believes and thereon alleges that, in or about April 2006,

5   Scatterday, on behalf of Vision, and Valverde memorialized and formalized the agreement set forth

6   in paragraph 8 of this Complaint by filing or causing to be filed in San Diego County a Fictitious

7   Business Name Statement changing the legal entity of Vision to a joint venture between Platinum

8   Realty Services and Valverde.  A true and correct copy of the Fictitious Business Name Statement

9   is attached hereto as **Exhibit B** and incorporated by reference as though fully set forth herein.

10         10.    PCB is informed and believes and thereon alleges that consistent with, and in

11   furtherance of, the agreement set forth in paragraph 8 of this Complaint, Valverde referred to

12   Scatterday and Vision two mortgage loan clients: Jose M. Torres a/k/a Francisco J. Macias

13   (collectively, "Torres") and Magdalena Ibarra ("Ibarra").

14   B.    <u>The Torres Loan</u>

15         11.    In or about December 2006, Scatterday, Vision, and Valverde submitted or caused to

16   be submitted to PCB a Uniform Residential Loan Application and supporting documentation

17   (collectively, "Torres Loan Application Package") relating to Torres' purchase of the property at

18   500 North Allen Street, Banning, California ("Torres Property").

19         12.    In reliance on the representations and certifications contained in the Torres Loan

20   Application Package, PCB approved and funded first and second mortgage loans (collectively,

21   "Torres Loans") in the principal sums of $200,000 and $50,000, respectively, for Torres' purchase

22   of the Torres Property.

23         13.    Torres never made a payment on the Torres Loans.

24         14.    Thereafter, further investigation into the representations and certifications contained

25   in the Torres Loan Application Package revealed the existence of substantial errors, omissions,

26   misrepresentations of material facts, and inaccurate facts and/or data, including, without limitation,

27   the following:

28             a.    The Torres Loan Application Package represented that the borrower's name

-3-

COMPLAINT FOR DAMAGES

1    was Jose M. Torres.  In fact, Torres' real name is Francisco J. Macias.

2  b.    The Torres Loan Application Package represented that Torres intended on

3    occupying the Torres Property as his primary residence.  In fact, Torres never

4    did, nor did he ever intend, on occupying the Torres Property as his primary

5    residence.

6  c.    The Torres Loan Appliction Package represented that Torres was a

7    supervisor with ARV 1 Maintenance located at 464 North 4th Street,

8    Banning, California.  In fact, that address does not exist.  PCB is also

9    informed and believes and thereon alleges that Torres is not employed

10    by ARV 1 Maintenance.

11  d.    The Torres Loan Application Package represents that Torres had no

12    additional real property obligations.  In fact, upon information and belief,

13    Torres owns the real property at 24162 Fir Avenue, Moreno Valley,

14    California yet this additional property was not disclosed in the Torres Loan

15    Application Package.  PCB is further informed and believes and thereon

16    alleges that Torres may have purchased or acquired additional property

17    using yet other names or identities.

18  e.    The Uniform Residential Loan Application contained within the Torres Loan

19    Application Package represents that it was taken via a face-to-face interview

20    by Scatterday and originated by Vision.  Upon information and belief, the

21    Uniform Residential Loan Application was taken, and the Torres Loans

22    originated, by Surpacific Home Loans, Inc. and processed by Valverde

23    consistent with the agreement set forth in paragraph 8 of this Complaint.

24  f.    The Torres Loan Application Package contains a Request for Verification

25    of Deposit for Washington Mutual account 315-121691-4 that

26    represented that the balance in the account as of November 21, 2006, was

27    $9,352.27 and had a two-month average balance of $6,780.32.  PCB is

28    informed and believes that the information contained in the Request

-4-

COMPLAINT FOR DAMAGES

1    for Verification of Deposit is false.

2    g.    The Uniform Residential Appraisal Report contained within the Torres

3    Loan Application Package represents that the garage in the Torres Property

4    was used for storage when in fact it had been converted into a residential

5    living area without proper permits.

6    15.    PCB is informed and believes and thereon alleges that Vision, Scatterday, and

7    Valverde knew or should have known of the errors, omissions, misrepresentations of material facts,

8    and inaccurate facts and/or data contained within the Torres Loan Application Package.

9    16.    Had any of the foregoing been accurately and truthfully disclosed or represented to

10   PCB, it would not have approved and funded the Torres Loans.

11   C.    The Ibarra Loan

12   17.    In or about January 2007, Scatterday, Vision, and Valverde submitted or caused to

13   be submitted to PCB a Uniform Residential Loan Application and supporting documentation

14   (collectively, "Ibarra Loan Application Package") relating to Ibarra's purchase of the property at

15   631 South Fairview Street, Unit 5E, Santa Ana, California ("Ibarra Property").

16   18.    In reliance on the representations and certifications contained in the Ibarra Loan

17   Application Package, PCB approved and funded first and second mortgage loans (collectively,

18   "Ibarra Loans") in the principal sums of $272,000 and $68,000, respectively, for Ibarra to purchase

19   the Ibarra Property.

20   19.    Thereafter, further investigation into the representations and certifications contained

21   in the Ibarra Loan Application Package revealed the existence of substantial errors, omissions,

22   misrepresentations of material facts, and inaccurate facts and/or data, including, without limitation,

23   the following:

24   a.    The Ibarra Loan Application Package represents that the Ibarra Loans

25   were originated by Scatterday and Vision.  In fact, the Ibarra Loans

26   were originated by Surpacific Home Loans, Inc. and Valverde

27   and processed by Scatterday and Vision consistent with the agreement

28   set forth in paragraph 8 of this Complaint.

-5-

COMPLAINT FOR DAMAGES

b.     The Uniform Residential Loan Application represented that Ibarra intended on occupying the Ibarra Property as her primary residence. In fact, Ibarra never did, nor did she ever intend, on occupying the Ibarra Property as her primary residence. At all times herein mentioned, the Ibarra Property was used for rental or investment purposes.

c.     The Uniform Residential Loan Application contained within the Ibarra Loan Application Package represents that Ibarra was employed as a General Manager of D & C Health Beauty Products LLC earning $8,760 per month. In fact, Ibarra is employed cleaning houses and earns substantially less than $8,760 per month.

d.     The Ibarra Loan Application Package contained a Request for Verification of Employment processed and completed by Valverde confirming Ibarra's position as General Manager for D & C Health Beauty Products LLC. The Request for Verification of Employment is false.

e.     The HUD-1 Settlement Statement prepared in connection with the closing of the Ibarra Loans noted a $12,000 payment for a debt purportedly owed by the seller to Ignacio Carbahal. In fact, the $12,000 payment reflected on the HUD-1 Settlement Statement was a clandestine commission paid to Ignacio Carbahal as compensation for referring Ibarra to Valverde in connection with this transaction.

f.     In order to compensate for loan payments that were higher than what was initially quoted to Ibarra, Valverde promised a kick back to Ibarra equal to the difference between the promised and actual monthly payments on the Ibarra Loans, or approximately $2,250 per month.

20.     PCB is informed and believes and thereon alleges that Vision, Scatterday, and Valverde knew or should have known of the errors, omissions, misrepresentations of material facts, and inaccurate facts and/or data contained with the Ibarra Loan Application Package.

-6-

COMPLAINT FOR DAMAGES

1      21.    Had any of the foregoing been accurately and truthfully disclosed or represented to

2  PCB, it would not have approved and funded the Ibarra Loans.

3  D.    <u>Damages</u>

4      22.    As a direct and proximate result of the foregoing, PCB has incurred, or will incur,

5  damages of at least $110,000 on the Torres Loans, exclusive of attorneys' fees and costs.

6      23.    As a direct and proximate result of the foregoing, PCB has incurred, or will incur,

7  damages of at least $89,000 on the Ibarra Loans, exclusive of attorneys' fees and costs.

8  **FIRST CAUSE OF ACTION**

9  **BREACH OF CONTRACT**

10  **(Against Vision)**

11      24.    PCB incorporates each of the allegations contained in paragraphs 1 through 23 of the

12  Complaint as though fully set forth herein.

13      25.    The Mortgage Broker Agreement constitutes a valid, enforceable contract between

14  PCB and Vision.

15      26.    Vision has breached the Mortgage Broker Agreement by submitting or causing to be

16  submitted false and erroneous information and statements and by omitting material facts to make

17  such information and statements true, accurate and complete regarding the Torres Loans and Ibarra

18  Loans.

19      27.    PCB has fully performed its obligations under the Mortgage Broker Agreement.

20      28.    As a direct and proximate result of the foregoing, PCB has incurred damages, in an

21  amount to be proven at trial, but in no event less than $199,000 exclusive of attorneys' fees and

22  costs.

23  **SECOND CAUSE OF ACTION**

24  **BREACH OF CONVENANT OF GOOD FAITH AND FAIR DEALING**

25  **(Against Vision)**

26      29.    PCB incorporates each of the allegations contained in paragraphs 1 through 23 of the

27  Complaint as though fully set forth herein.

28      30.    The Mortgage Broker Agreement carries with it an implied covenant of good faith

-7-

COMPLAINT FOR DAMAGES

1   and fair dealing.

2       31.    Vision has breached this covenant by submitting or causing to be submitted the

3   Torres Loan Application Package and Ibarra Loan Application Package which failed to comply

4   with the representations and warranties of the Mortgage Broker Agreement and engaging in

5   conduct which operates as a fraud upon PCB.

6       32.    As a direct and proximate result of the foregoing, PCB has incurred damages, in an

7   amount to be proven at trial, but in no event less than $199,000 exclusive of attorneys' fees and

8   costs.

9                              **THIRD CAUSE OF ACTION**

10                             **BREACH OF WARRANTY**

11                                **(Against Vision)**

12      33.    PCB incorporates each of the allegations contained in paragraphs 1 through 23 of the

13  Complaint as though fully set forth herein.

14      34.    Vision expressly represented and warranted to PCB in the Mortgage Broker

15  Agreement that the Torres Loan Application Package and Ibarra Loan Application Package did not

16  contain false and erroneous information and statements and did not omit material facts to make

17  such information and statements true, accurate and complete.

18      35.    Vision has breached this express warranty by submitting or causing to be submitted

19  the Torres Loan Application Package and Ibarra Loan Application Package which failed to comply

20  with the representations and warranties of the Mortgage Broker Agreement.

21      36.    As a direct and proximate result of the foregoing, PCB has incurred damages, in an

22  amount to be proven at trial, but in no event less than $199,000 exclusive of attorneys' fees and

23  costs.

24                             **FOURTH CAUSE OF ACTION**

25                                   **NEGLIGENCE**

26                              **(Against All Defendants)**

27      37.    PCB incorporates each of the allegations contained in paragraphs 1 through 23 of the

28  Complaint as though fully set forth herein.

-8-

COMPLAINT FOR DAMAGES

1    38.     At all times herein mentioned, the Defendants and each of them owed a duty to PCB

2    to exercise reasonable care, skill and diligence in their activities in connection with the origination

3    and funding of Torres Loans and Ibarra Loans.

4    39.     Each of the Defendants has breached their duty of care by, among other things,

5    submitting or causing to be submitted the Torres Loan Applicationa Package and Ibarra Loan

6    Application Package that did not comply with the representations and warranties in the Mortgage

7    Broker Agreement.

8    40.     As a direct and proximate result of the foregoing, PCB has incurred damages, in an

9    amount to be proven at trial, but in no event less than $199,000 exclusive of attorneys' fees and

10    costs.

11                          **FIFTH CAUSE OF ACTION**

12                                 **FRAUD**

13                          **(Against All Defendants)**

14    41.     PCB incorporates each of the allegations contained in paragraphs 1 through 23 of the

15    Complaint as though fully set forth herein.

16    42.     The Defendants and each of them made or caused to be made misrepresentations of

17    material fact in the Torres Loan Application Package as more fully set forth in paragraphs 14(a)

18    through 14(f) of this Complaint.

19    43.     The Defendants and each of them made or caused to be made misrepresentations of

20    material fact in the Ibarra Loan Application Package as more fully set forth in paragraphs 19(a)

21    through 19(f) of this Complaint.

22    44.     These misrepresentations of material fact in the Torres Loan Application Package

23    and Ibarra Loan Application Package were known by Defendants to be false.  The Defendants

24    acting on behalf of each other made or caused to be made the material misrepresentations of fact

25    with the intent of inducing PCB into approving and funding the Torres Loans and Ibarra Loans.

26    45.     PCB believed and reasonably relied on the representations and certifications made in

27    the Torres Loan Application Package and Ibarra Loan Application Package and in fact PCB was

28    induced into approving the Torres Loans and Ibarra Loans on the basis of these representations and

COMPLAINT FOR DAMAGES

1 certifications. If PCB had known the true facts, it would not have approved and funded the Torres

2 Loans and Ibarra Loans.

3      46.     As a direct and proximate result of the foregoing, PCB has incurred damages, in an

4 amount to be proven at trial, but in no event less than $199,000 exclusive of attorneys' fees and

5 costs.

6 **SIXTH CAUSE OF ACTION**

7 **NEGLIGENT MISREPRESENTATION**

8 **(Against All Defendants)**

9      47.     PCB incorporates each of the allegations contained in paragraphs 1 through 23 of the

10 Complaint as though fully set forth herein.

11      48.     Each of the Defendants made representations in the Torres Loan Application

12 Package as more fully set forth in paragraphs 14(a) through 14(f) herein and Ibarra Loan

13 Application Package as more fully set forth in paragraphs 19(a) through 19(f) herein in the course

14 of their business as real estate and/or real estate finance professionals in which they had a pecuniary

15 interest.

16      49.     Each of the Defendants supplied false information, representations, certifications, or

17 documentation in the Torres Loan Application Package and Ibarra Loan Application Package in

18 connection with their business as real estate and/or real estate finance professionals in which they

19 had a pecuniary interest.

20      50.     Each of the Defendants failed to exercise reasonable care, skill, and diligence in

21 obtaining or communicating the information, representations, certifications, or documentation to

22 PCB in the Torres Loan Application Package and Ibarra Loan Application Package.

23      51.     PCB reasonably relied on the information, representations, certifications, and

24 documentation from Defendants in approving and funding the Torres Loans and Ibarra Loans.

25      52.     As a direct and proximate result of the foregoing, PCB has incurred damages, in an

26 amount to be proven at trial, but in no event less than $199,000 exclusive of attorneys' fees and

27 costs.

28 //

-10-

## SEVENTH CAUSE OF ACTION

### AGENCY LIABILITY

#### (Against All Defendants)

53.     PCB incorporates each of the allegations contained in paragraphs 1 through 23 of the Complaint as though fully set forth herein.

54.     In committing the acts and omissions more fully set forth in this Complaint, each of the Defendants were acting as agents for the other Defendants.

55.     Each of the Defendants were acting within the course and scope of their agency when committing the acts and omissions set forth in this Complaint.

56.     Therefore, each of the Defendants is liable for the losses incurred by PCB as a result of the acts and omissions of the other Defendants

57.     As a direct and proximate result of the foregoing, PCB has incurred damages, in an amount to be proven at trial, but in no event less than $199,000 exclusive of attorneys' fees and costs.

## EIGHTH CAUSE OF ACTION

### CONSPIRACY

#### (Against All Defendants)

58.     PCB incorporates each of the allegations contained in paragraphs 1 through 23 of the Complaint as though fully set forth herein.

59.     PCB alleges that commencing in or about April 2006, the Defendants knowingly and willfully conspired and agreed amongst themselves to commit lawful acts in an unlawful manner and/or to commit unlawful acts alleged herein.

60.     As a direct and proximate result of the foregoing, PCB has incurred damages, in an amount to be proven at trial, but in no event less than $199,000 exclusive of attorneys' fees and costs.

### PRAYER FOR RELIEF

WHEREFORE, PCB prays for Judgment against Defendants, and each of them, as follows:

1.     For general damages according to proof;

-11-

2.    For special damages of $250,000 and additional amounts according to proof;

3.    For exemplary and punitive damages according to proof;

4.    For attorneys' fees, witness fees, and costs of suit; and,

5.    For such other and further relief as the Court may deem proper.

Dated: May 29, 2008.

AMERICAN MORTGAGE LAW GROUP, PC

By _____
James W. Brody
Attorneys for Platinum Community Bank

-12-

COMPLAINT FOR DAMAGES

# TABLE OF CONTENTS

Exhibit A..................................................................................Page 1

Exhibit B..................................................................................Page 13

 **BROKER APPLICATION PACKAGE**

## Mortgage Broker Agreement

The parties ("Parties") to this Agreement wish to establish a non-exclusive relationship whereby the undersigned Broker ("Broker") will submit complete credit and property loan application packages ("Loan Packages") to Platinum Community Bank ("Bank") on behalf of the Broker's customers ("Borrowers") for possible purchase and/or funding by Bank.

The Parties agree to the following:

The relationship between the Parties is an independent contractor relationship. The Broker is not an agent of Bank and shall not represent to third parties that it is acting as an agent for Bank, nor shall it use Bank's name in any advertising without Bank's express prior written consent. Nothing contained in this Agreement shall obligate the Broker to submit all loans to Bank or obligate Bank to fund any or all loans submitted by the Broker.

The Broker shall be responsible for the accurate preparation and execution of complete credit and property Loan Packages for mortgages secured by real property ("Loans"), at the sole expense of Broker. The Loan Package shall conform to Bank's policies and procedures as established by Bank and as may be modified from time to time. Bank shall periodically make changes in its eligibility criteria and submission requirements for the making of loans based on factors such as, but not limited to, type of loan, loan limits, loan-to-value ratios, interest rates, points and fees, payment features, prepayment penalties, documentation requirements and credit standards. In the event that Broker has conducted negotiations with an applicant in a language other than English, Broker must notify Bank in writing and receive approval from Bank in writing prior to closing. Broker must comply with all applicable requirements regarding the provision of documents in the language which was used to conduct negotiations. Bank may also publish procedures for registration of loans with Bank, including, but not limited to, the procedure for locking-in ("Lock") the interest rate and/or points and fees on Loans. Bank, or affiliated companies, may offer title, homeowners, auto, life insurance and other financial products to Borrowers. Bank may refuse to accept documentation from an appraiser, or other vendor, in connection with the preparation or submission of any Loan Package at the sole discretion of Bank.

For any loan application that utilizes the Bank's online systems, the Broker warrants that the Broker has properly input into the Bank's online systems all income, assets, debt, and other information as stated on the loan application and as required by the Bank's online systems, and as verified by the documentation standards of the Bank's underwriting guidelines. Broker represents and warrants that all information input into the Bank's online systems are true, complete and accurate in all material respects. Broker further represents and warrants that the Loan Package, when submitted to Bank will contain all complete information as required by the loan feedback report. Broker shall be responsible for promptly updating the Bank's online system and the Loan Package and promptly notifying the Bank and Borrower, as applicable, if any aspect of the applicant's loan transaction, including rate, fees, charges, prepayment penalty, Broker compensation or borrower's financial or credit situation changes, prior to funding by Bank.

Bank shall have the sole responsibility for underwriting and approving the Loans. The Broker shall not hold itself out to prospective Borrowers as having the authority to approve Loan Applications or issue Loan Commitments on behalf of Bank. The Broker shall not represent that Bank has approved or will approve any Loan until the Broker is so informed by Bank in writing. Broker shall prepare the closing documents for all Loans unless Broker has received prior approval in writing from Bank for Broker to prepare closing documents from an authorized document preparation company. In all cases, Bank must provide funding authorization. Bank shall fund each Loan in such a fashion that the Broker shall not be required to use its own funds or warehouse lines of credit. Broker acknowledges that the information in the Loan Package may be subject to Bank's independent verification, underwriting approval, or quality control review but this shall not affect Broker's duties, responsibilities, representations, warranties, and covenants hereunder and Broker shall not be entitled to rely on such actions of Bank to in any way relieve Broker of his/her/its obligations, responsibilities, representations, warranties and covenants herein. Broker acknowledges that failure of Bank to review or discover any deficiency or error in the Loan Package before or at time of funding by Bank will not release Broker from its obligations to provide any required documentation or correct any errors subsequently discovered. Nor will such a failure to review or discover deficiencies or errors prevent or inhibit Bank's exercise of any of its remedies hereunder. Broker shall provide such additional information as Bank may reasonably request to assist Bank in marketing the Loans to the secondary market and complying with all applicable legal requirements. Broker understands that such request may occur after the funding of the Loan by Bank.



**BROKER APPLICATION PACKAGE**

Nothing shall be owed to the Broker by Bank on account of any proposed loan or Loan Package that is not closed and funded by Bank. Upon the closing and funding of any loan for which Broker has submitted a Loan Package to Bank, Bank shall remit to the Broker or Closing Agent, an amount for origination compensation, that is reasonably related in an amount to the goods purchased, services rendered and/or facilities provided, as applicable. The price paid for any Loan(s) and all other issues related to pricing of Loan(s) will be determined by Bank's pricing policies. All loans must be Locked prior to closing and funding by Bank.

Nothing in the Agreement prohibits the Broker, if permissible under applicable federal and state laws, and Bank policies and procedures, from imposing fees upon borrowers for consultations and other services. All compensation shall be disclosed on the Good Faith Estimate of Closing Costs and the HUD-1/1A settlement statement in accordance with applicable law. If not otherwise required by law, Bank strongly encourages a written agreement between the Broker and the borrower(s) and if an agreement is required by state or federal law, a copy of the executed agreement shall accompany each completed Loan Package delivered to Bank pursuant to this Agreement.

The Broker represents and warrants to Bank that as of the time any Loan Package is submitted to Bank and as of the time the Loan is closed and funded, that:

The Broker possesses all necessary licenses, permits, and authority to engage in the activities contemplated by this Agreement and will provide to Bank, at the time this Agreement is executed and thereafter upon request, proof of such licensing. With respect to each Loan Package submitted by the Broker and funded by Bank, the Broker has complied with all applicable Bank policies and local, state, and federal laws and regulations, including, but not limited to, Bank's Broker's Responsibilities Policy (Addendum A), the Real Estate Settlement Procedures Act and Regulation X, the Fair Credit Reporting Act, the Equal Credit Opportunity Act and Regulation B, and the Truth-In-Lending Act and Regulation Z. The Broker will originate all Loans in a manner consistent with standard and/or customary business practices and procedures prevalent in the mortgage banking and lending industry. All Loan Packages submitted to Bank have been originated and prepared by trained, and as applicable, licensed employees or agents of Broker, competent in all relevant aspects of the mortgage banking and lending industry. Broker agrees to deliver to Bank any and all exhibits or documents obtained or prepared by the Broker in connection with each Loan Package submitted. Immediately prior to each submission contemplated by this Agreement, the Broker has good and marketable title to the Loan Package, free and clear of all liens, encumbrances, charges and/or rights of others and the Broker will warrant and defend title thereto.

The Broker shall not submit in any Loan Package any false or erroneous information or statements, or omit any material fact necessary to make any statement or information included in the Loan Package true, accurate and complete. For purposes of this warranty, the term "submit" shall mean submitting a Loan Package to Bank with false, fraudulent, misrepresented, or erroneous information, with actual knowledge thereof; or submitting a Loan Package to Bank with false, fraudulent, misrepresented or erroneous information after failing to follow standard and/or customary practices and procedures prevalent in the mortgage banking and lending industry which, if followed, would have led to the discovery or disclosure thereof; or submitting a Loan Package to Bank with false, fraudulent, misrepresented or erroneous information where such information was, or, under applicable standard and/or customary mortgage business practices and procedures prevalent in the mortgage banking and lending industry, should have been within the knowledge or control of the Broker; or submitting a Loan Package to Bank containing an appraisal that contains false, fraudulent, misrepresented or erroneous information. The Broker warrants that all real estate appraisals made in connection with each Loan Package are independent valuations and shall have been performed in accordance with Bank underwriting guidelines and in accordance with industry standards in the appraising industry in the area where the appraised property is located and that the appraisal accurately represents the value, condition, ownership history and property transfer history of the appraised property and comparable sales. The Broker warrants that Broker has maintained possession and control of all credit, employment, income, asset, borrower, property, and appraisal documentation submitted to Bank with respect to the Loan Package. The Broker has no knowledge of any circumstances or conditions with respect to any Loan Package that can be reasonably expected to cause any governmental, quasi-governmental or private institutional investor to regard any Loan or Loan Package as an unacceptable investment, cause the Loan to become delinquent, or adversely affect the value or marketability of a Loan. Broker acknowledges that Bank may report suspected incidences of fraud or misrepresentation to the appropriate state and federal regulatory authorities, law enforcement agencies, fraud investigation companies, fraud websites, fraud databases, investors, and others. Broker acknowledges the importance of

BROKER APPLICATION PACKAGE

© 2008 PLATINUM COMMUNITY BANK MORTGAGE
Revised 8/23/2008

Exhibit A
Page 2



**BROKER APPLICATION PACKAGE**

Bank's right and necessity to disclose such information. Broker waives any and all claims for liability, damages and equitable or administrative relief in connection with Bank's disclosure of such information.

Except as otherwise disclosed to Bank in writing and approved by Bank in writing before the submission of any Loan Package, the Broker (and Broker's agents, employees, principals, officers and directors) shall have no direct or indirect ownership interest in any property acting as security for the Loan, or any business or personal affiliation (including, but not limited to any affiliation contemplated by the Bank Holding Company Act or any affiliation involving marriage or blood) with, or interest in, any provider of settlement services, including but not limited to real estate agency, credit reporting company, credit repair company, appraisal company, document preparation company, closing agent, escrow agent, title company, insurance agent, insurance company, accounting company, tax preparation company, home builder, home improvement company, or building contractor. The Broker (and Broker's agents, employees, principals, officers and directors) shall not receive any direct or indirect payment from any person other than the applicant and the Bank with respect to the Loan, including without limitation, a payment involving appraisal, escrow, approval, closing, funding, or sale.

The Broker will reimburse the Bank any amounts paid by the Borrower to the Broker and subsequently paid by Bank to Borrower if any Loan is rescinded by a Borrower. The Broker will reimburse to Bank any Yield Spread Premiums, Rebate Pricing or other premiums paid to the Broker if any loan is paid-in-full within 120 calendar days after such loan is funded by Bank. The Parties agree that this paragraph shall survive the termination of this Agreement.

Except as previously disclosed to Bank in writing, there is not pending or, to the best of Broker's knowledge, threatened any suit, action, arbitration, or legal, administrative, or other proceeding or governmental investigation (including, but not limited to, an investigation undertaken in response to an allegation of fraud or misrepresentation by another lender, investor, or governmental or quasi-governmental agency or an investigation undertaken pursuant to a license revocation proceeding) against the Broker.

This Agreement and all actions provided for in the Agreement have been authorized by the Broker's Board of Directors, if the Broker is a corporation, or by such individuals empowered and authorized to enter into agreements on behalf of the Broker. This Agreement constitutes a valid and legally binging agreement of the Broker enforceable in accordance with its terms.

In addition to any other rights and remedies that Bank may have, the Broker shall indemnify and hold harmless Bank and its shareholders, directors, officers, agents, successors, designees, and assignees from any loss (including loss of servicing rights) damages, suits, claims, or expenses or any nature (including attorney's fees and costs of suit) incurred by Bank resulting from any breach of any representation or warranty contained in this Agreement, the Broker's failure to perform any obligation set forth in this Agreement, or any claim by a Borrower resulting from Bank's failure or refusal to fund a Loan. The Broker's obligation to indemnify Bank under this Agreement shall not be affected by Bank's taking of the following actions with or without notice to the Broker (a) liquidation, repayment, retirement or sale or resale of any Loan; (b) foreclosure of any Loan; or (c) sale or resale of the property securing the Loan. The Parties agree that this paragraph shall survive the termination of this Agreement. Without limiting the generality of the foregoing, in the event of any breach of any representation, warranty, or covenant contained in this Agreement, Broker's indemnity shall extend to any third party to which Bank has sold any Loan and to any assignee thereof.

The Broker will not solicit for refinance any Loan(s) funded by Bank for a period of twelve (12) months from the date the Loan is funded. If borrower(s) request a refinance from the Broker, the Broker agrees to give Bank first right of approval and funding the new loan request. If the Broker does not offer the first right for the refinance loan to Bank, the Broker will be required to repay to the Bank any premium pricing paid to the Broker on the original Loan being refinanced. The Parties agree that this paragraph shall survive the termination of this Agreement.

In addition to other rights and remedies that Bank may have, in the event a basis exists to demand indemnification under the terms of this Agreement, and the Loan in question is closed and funded by Bank, Bank may demand that the Broker cure the breach in all material respects within 30 calendar days to the satisfaction of Bank. In the event the breach cannot be cured to Bank's satisfaction, Bank may require Broker to repurchase the Loan from Bank or the applicable investor at the higher of the price Bank must pay to repurchase the Loan from the applicable investor or the original principal amount of the Loan, less principal reductions; plus all interest accrued but unpaid on the principal balance of the Loan from the date of funding by

Exhibit A
Page 3



**BROKER APPLICATION PACKAGE**

Lender through and including the first day of the month following the month the repurchase is made; plus any yield spread premium, rebate pricing or premium price paid to the Broker; plus a Repurchase Management fee of fifteen hundred dollars ($1,500) payable to Bank; plus all costs and expenses incurred by Bank in enforcing the Broker's obligation to repurchase the Loan, including, without limitation, reasonable attorney's fees and costs of suit. The Parties agrees that this paragraph shall survive the termination of this Agreement.

Bank shall have the right, without prior notice, to set off and to appropriate or apply any and all property or indebtedness of any kind at any time held or owing by Bank to or for the credit of the account of the Broker against and on account of the obligation owed by the Broker to Bank, irrespective of whether the obligations arise out of a different transaction than that creating the indebtedness or whether or not Bank shall have made any demand or whether or not said obligation shall have matured. This right to set off specifically includes the right of Bank to set off where the Broker fails to deliver a Loan on a forward lock or "pulls" the loan after it has been delivered, prior to funding and Bank incurs non-delivery or "pair-off" fees or costs, including hedge costs.

Either party may terminate this Agreement at any time, upon written notice to the other party, with or without cause. Any termination shall not affect Bank's obligation to pay any amounts due to Broker under this Agreement; or any other obligation already committed to or obligated by either party under this Agreement, including, but not limited to the obligations of the Broker with respect to Indemnification.

The Broker shall give written notice to Bank within five (5) days of the occurrence of any breach of a representation or warranty as set forth in this Agreement; any event or condition which could have material adverse effect on the business, operations, assets or financial condition of the Broker; and receipt by the Broker of notice from any agency concerning revocation or suspension of the Broker's license to conduct or transact business.

During the term of this Agreement, Broker may have access to Bank's internal records, systems, and methods of operating its business, trade secrets, customer lists, vendor lists, price lists, contract information, employee lists, and other confidential or proprietary information. Broker agrees that all such information is the exclusive property of Bank, irrespective of whether such information was created or prepared by Broker or others. Broker further agrees that Broker will not, at any time, in any manner, directly or indirectly, disclose or copy such information to any person or entity, or use such information other than in furtherance of the purposes of Bank. Upon termination of this Agreement, Broker will deliver to Bank all property of Bank, including any copy or written memorial of, or documents relating to, the information described above. The Parties agree that this paragraph shall survive the termination of this Agreement.

As a material condition to which Broker agrees in exchange for the opportunity to engage in the transactions contemplated by this Agreement ,provide the Services, Broker expressly acknowledges and agrees that all discoveries, inventions, processes, designs, plans, and trade secrets, whether of a technical nature or not, made or developed by Broker alone or in conjunction with any other person or entity while performing its services hereunder, which relate to or affect the business of Bank ("Intellectual Property"), shall be the sole and exclusive property of Bank. Broker expressly agrees to disclose and reveal to Bank all Intellectual Property, and all information regarding Intellectual Property, concurrent with the discovery or development of the Intellectual Property. Broker hereby assigns to Bank all rights, title, and interest in any Intellectual Property. Broker agrees that he/she/it will not use or disclose any Intellectual Property owned by Bank to benefit a competitor, customer, individual, or other entity without the express written permission of Bank. Broker will not copy or misuse any of Bank's computer software or programs, including any programs, processes, or content available on Bank's websites. The Parties agree that this paragraph shall survive termination of this Agreement.

The Broker agrees to comply with all applicable laws, regulations, and industry standards regarding privacy, Borrower, and data security. Broker shall maintain in strict confidence and shall not use any nonpublic personal information relating to Borrowers obtained from Bank or obtained as a result of services performed for Bank for any purpose, except as necessary in the ordinary course of business to perform the services specified under this Agreement. Broker will implement appropriate administrative, technical, and physical safeguards and other appropriate measures to protect the security, confidentiality and integrity of nonpublic Borrower information and other Borrower information received by Broker from or on behalf of Bank, all as may be appropriate to meet the objectives of the federal Gramm-Leach-Bliley Act, 15 USC §§ 6801 et seq. (the "GLB Act"), its implementing regulations, and the guidelines issued pursuant to § 501 of the GLB Act. These measures shall be

BROKER APPLICATION PACKAGE

© 2008 PLATINUM COMMUNITY BANK MORTGAGE
Revised 8/23/2008



**BROKER APPLICATION PACKAGE**

designed to ensure the security and confidentiality of Borrower information, protect against any anticipated threats or hazards to the security and confidentiality of Borrower information, and protect against unauthorized access to or use of such information that could result in substantial harm or inconvenience to any Borrower. Broker shall notify Bank within five (5) days with information regarding any failure of its security measures or any security breach related to Borrower information. Broker will ensure that any third party to whom it transfers or provides access to Borrower information signs a written contract in which it agrees to restrict its use of Borrower information to the use specified in the agreement between the Broker and the third party (which use must be in conjunction with Broker's performance of its obligations hereunder); to comply with all applicable laws; and to implement and maintain appropriate administrative, technical and physical safeguards to protect the security, confidentiality and integrity of all Borrower information as provided herein. Broker will also be responsible for any unauthorized use or disclosure by any third party to whom it transfers or provides access to Borrower information to the same extent as if Broker had itself used or disclosed such information.

Broker shall permit, at Bank's option, Bank, Bank's regulators, internal auditors, and/or independent auditors chosen by Bank to investigate Broker's operations and business, and to investigate and copy Broker's files pertaining to Loan Packages submitted to Bank. Broker shall maintain in its possession, available for such inspection and copying, all documentation and records relating to Broker's compliance with the terms of this Agreement. Broker agrees to retain all documentation and correspondence pertaining to this Agreement and any Loan Package hereunder for the period required by applicable federal or state laws and regulations or in accordance with Bank's record keeping guidelines (seven years), whichever provides for the longest retention period.

Bank hereby appoints Broker its Limited Agent, and Broker hereby accepts such appointment, for the sole and specific purpose of providing to loan Applicants the 12 Day Notice required under Section 50(g) of the Texas Constitution in connection with Home Equity Loans in the State of Texas. Any 12 Day Notice provided to a loan applicant by Broker shall be deemed to have been provided by Bank.

The laws of the State of Illinois shall govern this Agreement and the exclusive venue for any suit or action, regardless of any amount in controversy and regardless of the availability of jurisdiction of any other court, including, but not limited to, any Small Claims Court, shall be the Superior Courts of Cook County, Illinois. If any court of competent jurisdiction shall hold any provision of this Agreement invalid or unenforceable, such holding shall not invalidate or render unenforceable any other provision of this Agreement.

All notices required to be provided pursuant to this Agreement shall be delivered to the addresses provided below for Bank and on the application for Broker. Notices shall be in writing and shall be deemed to have been given and received only upon delivery, if personally delivered to a party; one business day after the date of dispatch, if by facsimile transmission; one business day after deposit, if delivered by a nationally recognized courier service offering guaranteed overnight delivery; or three business days after deposit in the United States first class mail, certified mail, postage prepaid, return receipt requested. Notices to Bank must be made to:

President of Mortgage Lending Services
Platinum Community Bank
2200 Hicks Road, Suite 101
Rolling Meadows, IL 60008

With a copy to: General Counsel, Platinum Community Bank

This Agreement is intended to be the complete statement of the terms of the Broker's engagement by Bank. This Agreement supersedes all other prior and contemporaneous agreements and statements, whether written or oral, express or implied, pertaining in any manner to the engagement of the Broker, and it may not be contradicted by evidence of any prior or contemporaneous statements or agreements. To the extent that the practices, policies, or procedures of Bank are inconsistent with the terms of this Agreement, the provisions of this Agreement shall control. Bank will make changes to its policies and procedures periodically at its sole discretion. Broker agrees that the most current version of the policies and procedures as of the date a Loan Package is submitted to Bank is the applicable policies and procedures for the Loan, including applicable obligations, representations, warranties and covenants. The modified terms of the policies and procedures are accepted by

BROKER APPLICATION PACKAGE

© 2006 PLATINUM COMMUNITY BANK MORTGAGE
Revised 8/23/2006



**BROKER APPLICATION PACKAGE**

Broker upon submission of a Loan Package. The Broker may not assign this Agreement without prior written consent of Bank. Bank may assign this Agreement upon notice to the Broker.

No waiver of any provision of this Agreement, whether by conduct or otherwise, shall be deemed or shall constitute a waiver of any other provision. No waiver shall be binding unless executed in writing by the party making the waiver. If any legal action or proceeding is brought for the enforcement of any provision of this Agreement, or because of an alleged dispute, breach, default or misrepresentation in connection with any of the provisions of this Agreement, the prevailing party or parties shall be entitled to reasonable attorneys' fees and other costs incurred in that action or proceeding.

Both parties agree to take all reasonable measures to protect the confidentiality of the other party's proprietary loan program information. The Broker acknowledges that he/she/it has had the opportunity to consult legal counsel in regard to this Agreement, that he/she/it has read and understands this Agreement, that he/she/it is fully aware of its legal effect, and that he/she/it has entered into it freely and voluntarily and based on his/her/its own judgment and not on any representations or promises other than those contained in this Agreement. A signed original or copy of this Agreement shall be treated as an original for all purposes. This Agreement shall not be effective until accepted by Bank, as evidence by the signature of an authorized officer of Bank. Broker hereby authorizes all branches of Broker to conduct business with Bank without the need for each branch to sign a separate Agreement. Each branch location of Broker is subject to each and every term, condition, representation, and warranty set forth in this Agreement. Each branch location must be appropriately licensed in the state(s) in which they conduct business.

IN WITNESS WHEROF, the Parties have signed this Agreement as of the date set forth below:

**BROKER**   ◉ AGREE      ◯ DO NOT AGREE

Signature: _____   Title: _____   Date: _____
Owner of Duly Authorized Corporate Officer of Company

Broker expressly authorizes, consents, permits, and invites Bank to send documents, including unsolicited advertisements and any and all other materials or communications to all facsimile numbers, addresses, email addresses, phone numbers, or any other communication method not yet contemplated that is owned by Broker or provided by Broker to Lender in the Broker Application Package and subsequent communications and disclosures to Bank.

**BANK**

Signature: _____   Title: _____   Date: _____
Authorized Officer of Bank

© 2008 PLATINUM COMMUNITY BANK MORTGAGE
Revised 8/23/2006

 **BROKER APPLICATION PACKAGE**

## Addendum A – Broker's Responsibilities

All Brokers that submit Loan Packages to Bank must agree to the following Broker's Responsibilities. Please note, however, that the responsibilities set forth in this Addendum are in addition to the responsibilities of the Broker contained in the Agreement. Also, Broker is responsible for complying with all applicable local, state and federal laws, rules and regulations. This Addendum does not contain a complete listing of all such laws, rules, and regulations. In addition, the information provided below with regard to each law, rule and regulation that is listed in this Addendum is intended only as a summary of certain portions of that law, rule and regulation, and is not to be considered as a complete description of all requirements imposed on Broker or anyone else under such law, rule or regulation. Furthermore, laws, rules and regulations (and their interpretation by courts and regulatory authorities) can and do change from time to time, and it is the Broker's responsibility to comply with such laws, rules and regulations at the relevant time.

### *Fair Lending*

IT IS NOT ACCEPTABLE TO DISCRIMINATE AGAINST A CREDIT APPLICANT ON ANY PROHIBITED BASIS, INCLUDING A LOAN APPLICANT'S RACE, COLOR, NATIONAL OR ETHNIC ORIGIN, RELIGION, MARITAL OR FAMILIAL STATUS, GENDER, AGE (PROVIDED THE APPLICANT HAS THE CAPACITY TO ENTER INTO A BINDING CONTRACT), DISABILITY, BECAUSE ALL OR PART OF THE APPLICANT'S INCOME IS DERIVED FROM A PUBLIC ASSISTANCE PROGRAM, OR BECAUSE THE APPLICANT HAS, IN GOOD FAITH, EXERCISED ANY RIGHTS UNDER THE COMSUMER CREDIT PROTECTION ACT. .

### *Fair Housing Act (FHA)*

Prohibits discrimination in lending based on prohibited factors (race, color, religion, national origin, handicap, familial status, gender, and age). Also prohibits practices such as redlining, making excessively low appraisals, use of subjective or non-reviewable criteria, creating and exploiting a racially exclusive image, expressing intent to discriminate, and discriminating against women.
http://www.hud.gov/offices/fheo/FHLaws/index.cfm

### *Equal Credit Opportunity Act (ECOA)*

Prohibits discouraging applications and limits the manner in which lenders can inquire about marital status, spouses, former spouses, alimony and child support. Also establishes requirements for lenders such as providing copies of appraisals, providing appropriate disclosures and preserving records from the application/transaction.
http://www.ftc.gov/bcp/conline/pubs/credit/ecoa.htm

### *Fair Credit Reporting Act (FCRA)*

Regulates the activities of reporting agencies and the users of credit information and protects individuals from invasion of privacy and the dissemination of false or inaccurate information. Requires disclosures when adverse action is taken.
http://www.ftc.gov/os/statutes/fcra.htm

### *Home Mortgage Disclosure Act (HMDA)*

Requires lenders to collect certain information about the loans they make so the government can track applications and ensure lenders are taking and approving applications equally for all groups of people.
http://www.ffiec.gov/hmda/

© 2008 PLATINUM COMMUNITY BANK MORTGAGE
Revised 8/23/2008



**BROKER APPLICATION PACKAGE**

*Truth in Lending Act (TILA)*

Requires the disclosure of information about the lender, amount financed, and finance charge, payments, security and interest rate. Also establishes that borrowers have a right to rescind most loans secured by their primary residence within three business days of loan closing.
http://www.federalreserve.gov/regulations/title12/sec226/12cfr226_01.htm

*Real Estate Settlement Procedures Act (RESPA)*

Requires lenders to provide advance disclosure information on loan settlement procedures and costs. Also regulates the ways in which referrals between companies can be made and establishes parameters for the amount of money borrowers are required to place in an escrow account established for taxes and insurance.
http://www.hud.gov/offices/hsg/sfh/res/respa_hm.cfm

*Telemarketing Sales Rule*

Establishes parameters regarding the manner in which telemarketing can be conducted. Specifies times during which telemarketing is permitted, information that must be disclosed to consumers during telemarketing, and that records must be kept of telemarketing transactions.
http://www.ftc.gov/bcp/telemark/rule.htm

*Disclosures*

Broker must provide Applicants with a copy of the U.S. Department of Housing and Urban Development's booklet "Settlement Costs" and a properly completed Good Faith Estimate and Truth in Lending disclosure within three (3) business days after the loan application is received or prepared in full compliance with the requirements of RESPA and Regulation Z of the Truth in Lending Act.

In the event Applicant express interest in applying for an adjustable rate mortgage loan, at the time the application form is provide or before the Applicants pay a non-refundable fee, whichever is earlier, Broker will provide Applicants with a copy of the Federal Home Loan Bank Board's booklet entitled "Consumer Handbook on Adjustable Rate Mortgages" and a loan program disclosure for each adjustable rate mortgage loan program for which Applicants express interest.

Broker must provide Applicant with such other forms, disclosures and/or documents that are otherwise required to be provided by Broker to Applicants under applicable local, state and federal laws, rules and regulation that are applicable to Broker.

*Processing*

Broker agrees to follow standard and/or customary practices and procedures in preparing Loan Packages. Broker specifically agrees, but is not limited in responsibility to the following requirements of Bank:

No blank forms are to be signed by the loan officer or borrower. The loan officer must sign and date the initial and final application. No individual may at any time hand carry any Employment, Mortgage, Rent, or Deposit verification(s).

 **BROKER APPLICATION PACKAGE**

*Minimum Requirements for Compensation*

All credit applications must be taken by properly licensed loan officers of the Broker. With respect to each Loan Package submitted by the Broker to be funded by Bank, the Broker must assist the Borrower(s) with completing the application, and the Broker must perform a minimum of five services listed below, at least one of which must be a "non-counseling" type service and such services must be necessary for the transaction and not duplicative of services performed by others:

*"Non-Counseling Services"*

| | |
|---|---|
| (i) | Initiating/ordering verifications of employment and deposits |
| (ii) | Initiating/ordering requests for mortgage and other loan verifications |
| (iii) | Initiating/ordering appraisals |
| (iv) | Initiating/ordering inspections or engineering reports |
| (v) | Providing disclosures (Good Faith Estimates, Truth-In-Lending, etc.) to borrower |
| (vi) | Ordering Legal Documents |
| (vii) | Determining whether the property is located in a flood zone or ordering a flood search/certificate. |
| (viii) | Participating in the loan closing. |

*"Counseling Services"*

| | |
|---|---|
| (i) | Analyzing the prospective Borrower's income and debt, and pre-qualifying the Borrower to determine the maximum mortgage that the Borrower could afford. |
| (ii) | Educating the Borrower in the home buying and financing process, advising the Borrower about the different types of loan products available, and demonstrating how closing costs and monthly payments would vary under each product. |
| (iii) | Collecting financial information (tax returns, bank statement, etc.) and other related documents that are part of the application process. |
| (iv) | Assisting the Borrower in understanding and clearing credit problems. |
| (v) | Maintaining regular contact with the Borrower, Realtors and Bank between application and closing to apprise all parties of the status of the application and to gather any additional information as needed. |

*High Cost Loans and Maximum Charges / Fees / Points*

Bank will not accept any Loan where the "annual percentage rate" or "points and fees payable by the borrower" (as each such term is calculated under HOEPA) exceeds the maximum thresholds described under HOEPA ("Section 32"). This prohibition applies to all types of mortgages, including purchase money mortgages and refinance transaction mortgages. Loans that meet or exceed the thresholds for State or local high-cost loan statutes or State Usury restrictions are not allowed.

Bank will not accept any Loan where the total points and fees charged to the borrower exceed the greater of five percent of the mortgage amount or a maximum dollar amount of $1,000. Points and fees include origination fees, discount points, broker fees, processing fees, administration fees, underwriting fees, application fees, commitment fees, flood certification fees, overnight charges, wire fees, closing settlement fees, finder's fees, and charges that the lender imposes as a condition of making the loan—whether they are paid to the lender or a third party. Points and fees that do not have to be counted against this limitation (with proper documentation of actual costs) include fees paid for actual services rendered in connection with the origination of the mortgage, such as: attorneys' fees, notary's fees, and fees paid for property appraisals, credit reports, surveys, title examinations and extracts, flood and tax certifications, and home inspections; the cost of mortgage insurance; the costs of title, hazard, and flood insurance policies; state and local transfer taxes or fees; escrow deposits for the future payment of taxes and insurance premiums; and other miscellaneous fees and charges that, in total, do not exceed one-quarter percent of the loan amount. FHA/VA and certain Bond Loan programs may further limit the fees that may be charged to borrowers. refer to specific agency guidelines for these limitations.

 **BROKER APPLICATION PACKAGE**

*Prepayment Penalties*

Prepayment penalties should be fair and fully disclosed. Borrowers (with the exception of transactions covering investment properties) should be given the option to obtain a loan without a prepayment penalty (i.e. higher rate or price that relates to the value of the prepayment penalty which, if incurred, will either reduce or eliminate the prepayment penalty).

*Predatory Lending*

Bank strongly opposes predatory lending practices. Predatory lending practices hurt both lenders and borrowers and have an adverse effect on the entire mortgage lending industry and secondary market. While Bank does not define what constitutes "predatory loans", certain practices must be practiced to avoid predatory lending:

*Steering*

Steering refers to driving Applicants to higher rate or fee loans that are not in the Applicant's best interest. Originators should offer Borrowers interest rates no higher than those published by the Lender for the requested product for which the borrower would qualify based on the borrower's creditworthiness.

*Lending With Regard to Repayment Ability*

Originators should determine that all Applicants have the ability to repay their loans. A Lender's credit decision should be based primarily on the repayment ability of the Applicant as demonstrated by a reasonable evaluation of employment, income, assets and/or credit history. Over-reliance on property value can be detrimental to borrowers and may lead to excessive foreclosure rates.

*Loan "Flipping" or "Churning"*

Loan "Flipping or Churning" refers to the practice where an originator refinances a loan with a larger loan, where the additional proceeds are largely used for fees and charges. The payment amount may be maintained at or near the same level as the refinanced loan due to a longer amortization period or a change to an adjustable rate or a balloon payment. Loan flipping or churning is not acceptable.

*Tangible Net Benefit*

Transactions should be reviewed to ensure that the loan provides a tangible net benefit to the Applicant. Loans that refinance mortgages originated, subsidized, or guaranteed by a state or local government or a nonprofit organization, and which bear a below-market interest rate or have nonstandard payment terms may not be beneficial to the Applicant, and may be prohibited.

© 2006 PLATINUM COMMUNITY BANK MORTGAGE
Revised 8/23/2006



**BROKER APPLICATION PACKAGE**

*Loan Fraud – Zero Tolerance Policy*

Broker acknowledges that Broker is responsible for the content of the Loan Package submitted to Bank and the actions of his/her/its agents, employees, principals, officers and directors, branches and/or licensees. Broker will ensure that in particular, and without limitation, the true source of down payment is disclosed to Bank, the appraisal is a truly independent analysis of the value of the collateral, and the borrower's true income is accurately calculated and disclosed.

The submission of a loan application containing false information is a crime and the Bank is a Federally Chartered Savings Bank regulated by the United States of America. Broker acknowledges Bank reports all fraud to appropriate authorities and may civilly sue Broker, his/her/its agents, employees, principals, officers, and directors that participate in fraudulent activities.

### Types of Loan Fraud

1. Submission of inaccurate information, including false statements on loan application(s) and falsification of documents purporting to substantiate credit, employment, income, deposit and asset information, personal information including identity, ownership/non-ownership of real property, etc.
2. Forgery of partially or predominately accurate information.
3. Incorrect statements regarding current occupancy or intent to maintain minimum continuing occupancy as stated in the loan application, loan documents and security instrument.
4. Lack of due diligence by broker/loan officer/interviewer/processor, including failure to obtain all information required by the application and failure to request further information as dictated by Borrower's response to other questions, including;
   a) Unquestioned acceptance of information or documentation, which is known, should be known, or should be suspected to be inaccurate, and
   b) Simultaneous or consecutive processing of multiple owner-occupied loans from one applicant supplying different information on each application.
5. Allowing an applicant or interested third party to "assist" with the processing of the loan.
6. Broker's non-disclosure of relevant information.

### Consequences

The effects of Loan Fraud are costly to all parties involved. Bank stands behind the quality of its loan production. Fraudulent loans cannot be sold into the secondary market, and, if sold, will require repurchase by Bank. Fraudulent loans also damage our reputation with our investors and mortgage insurance providers.

The price paid by those who participate in loan fraud is even more costly. The following is a list of some (but not all) of the potential consequences that may result from fraud:

### Consequence to Broker

1. Criminal prosecution.
2. Loss of Mortgage Broker/Real Estate/Mortgage Banker's License.
3. Loss of lender access resulting from the exchange of information between lenders and mortgage insurance companies including submission of information to investors (FHLMC, FNMA, etc.), police agencies, FDIC, OTS, and the Department of Real Estate.
4. Civil action by Bank.
5. Civil action by applicant/borrower or other parties to the transaction
6. Loss of approval status with Bank.

Exhibit A
Page 11



**BROKER APPLICATION PACKAGE**

*Consequences to Borrower*

1. Acceleration of debt (FNMA/FHLMC Mortgage Deed of Trust, revised 9/90). Item #6 states: "Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to lender (or failed to provide lender with any material information) in connection with the loan evidenced by the Note, including but not limited to, representations concerning Borrower's occupancy of the property as a principal residence".
   NOTE: Foreclosure action will not allow the Borrower the benefit of reinstatement in order to cure the default. The Borrower must pay off the loan in full prior to the sale date of the property.
2. Criminal prosecution.
3. Civil action by Bank.
4. Civil action by other parties to the transaction, such as seller or real estate agent/broker.
5. Employment termination.
6. Loss of professional license, if any.
7. Adverse effect on credit history.

*Acknowledgement*

As a condition of entering into and maintaining a business relationship with Platinum Community Bank, the undersigned: 1) acknowledges understanding of Broker's Responsibilities policy 2) agrees to comply with the letter and spirit of all federal, state, and local licensing, lending, disclosure, and consumer protection laws; 3) agrees to educate his/her/its agents, employees, principals, officers, directors, branches and/or licensees about fair lending practices, the preceding laws, predatory lending avoidance and the consequences of fraud; and 4) agrees to advise Bank immediately upon learning of any violation of the preceding policy by its agents, employees, principals, officers, directors, branches, licensees, affiliates, or third-party service providers.

**BROKER** ⦿ AGREE   ○ DO NOT AGREE

Signature: _____ Owner or Duly Authorized Corporate Officer of Company   Title: _____ Date: _____

FICTITIOUS BUSINESS NAME STATEMENT
—
FILE NO:2006-014268
FICTITIOUS BUSINESS NAME(S):
Vision Realty & Mortgage

LOCATED AT:
4444 Vandever Ave.
San Diego, CA 92120
THIS BUSINESS IS CONDUCTED BY:
Joint Venture
THE FIRST DAY OF BUSINESS WAS:
4/14/2006
THIS BUSINESS IS HEREBY REGISTERED BY THE FOLLOWING:
Platinum Realty Services
California
Wilton Valverde
4444 Vandever Ave.
San Diego, CA 92120
THIS STATEMENT WAS FILED WITH GREGORY J. SMITH, RECORDER/COUNTY CLERK OF SAN DIEGO COUNTY ON:
APR 14 2006
I declare that all information in this statement is true and correct. (A registrant who declares as true information which he or she knows to be false is guilty of a crime.)
/s/Rick Scatterday
NOTICE - THIS FICTITIOUS NAME STATEMENT EXPIRES FIVE (5) YEARS FROM THE DATE IT WAS FILED IN THE OFFICE OF THE COUNTY CLERK. A NEW FICTITIOUS BUSINESS NAME STATEMENT MUST BE FILED BEFORE THAT TIME.
Pub.April 19,26, May 3,10-00005077

COPY
ORIGINAL ECL
FILED

%JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

08 JUN -2 PM 12: 27

CLERK U.S. DISTRICT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

**I. (a) PLAINTIFFS**

Platinum Community Bank

**DEFENDANTS**

Platinum Realty Services d/b/a Vision Realty & Mortgage, a California corporation, et al.

**(b)** County of Residence of First Listed Plaintiff   Cook
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   San Diego
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

James W. Brody, American Mortgage Law Group,
75 Rowland Way, Ste. 350, Novato, CA 94945  (415) 878-0030

Attorneys (If Known)

'08 CV 0977 BEN JMA

BY FAX

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☒ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause:
Breach of Contract/Negligence/Fraud      28 U.S.C. § 1391 (a)

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE   5/29/08

SIGNATURE OF ATTORNEY OF RECORD   James W. Brody

FOR OFFICE USE ONLY

RECEIPT # 15144   AMOUNT 350.   APPLYING IFP ___   JUDGE ___   MAG. JUDGE ___

6/2/08